United States District Court
Southern District of Texas
ENTERED
July 30, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| SAYED S.[1],<br>Petitioner,<br><br>v.<br><br>FRANCISCO VENEGAS,<br>Respondents. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 1:25-cv-179 |

**REPORT AND RECOMMENDATION**
**TO GRANT PETITIONER'S WRIT OF HABEAS CORPUS AND**
**RECOMMENDING PETITIONER'S RELEASE FROM DETENTION**

## I. Synopsis

Petitioner argues his detention is unlawful because it (1) exceeds the presumptively reasonable period set out in *Zadvydas* and (2) there is no significant likelihood of removal in the reasonably foreseeable future. The Court agrees. The Government detained Petitioner for over one year without deportation after securing a final order of removal; this violates Petitioner's constitutional rights. Thus, it is RECOMMENDED that the Court (1) grant the Petition for Writ of Habeas Corpus; (2) order Petitioner's release from Respondents' custody; and (3) deny Respondents' Motion for Summary Judgment.

## II. Jurisdiction

Petitioner challenges the constitutionality of his post-removal-period detention by arguing that the Government has not shown there is a significant likelihood of his removal in the reasonably foreseeable future. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (concluding that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."); 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under

[1] Due to significant privacy concerns in immigration cases and noting that judicial opinions are not subject to Federal Rule of Civil Procedure 5.2, any opinion, order, judgment, or other disposition in this case will refer to the petitioner only by first name and last initial.

the Constitution."). Given Petitioner's constitutional challenge to post-removal-period detention[2], the Court has subject matter jurisdiction to entertain this claim.

**III. Venue**

28 U.S.C. § 2241(a) provides that "[w]rits of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." *See Braden v. 30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 495 (1973). Petitioner is currently detained in El Valle Detention Facility. Dkt. No. 1 at 1. The Facility lies within Willacy County, a county served by the Brownsville Division of the United States District Court for the Southern District of Texas. Accordingly, venue is proper in this Court and division.

**IV. Factual History**

Petitioner is a national of Afghanistan. Dkt. No. 1 at 6-7. On January 13, 2025, Petitioner entered the United States and orally requested asylum. *Id.*; Dkt. No. 18-1 at 2. Petitioner was interviewed by the Tactical Terrorism Response Team (TTRT), where he claimed to have worked for the US military for two years and presented a letter from the Department of Defense (DOD) to support his claim. Dkt. No. 18-1 at 2. According to government files, however, evidence contradicts this assertion and suggests that the letter was possibly fraudulent. *Id*. Further, the government alleges that Petitioner has French refugee status. *Id*.

On February 6, 2025, the U.S. Citizenship and Immigration Services (USCIS) conducted a credible fear interview and subsequently issued a negative credible fear determination.[3] *Id*. Petitioner requested review by an Immigration Judge (IJ). *Id*. The next day, on February 7, 2025, an Immigration Judge affirmed the negative credible fear finding. On March 5, 2025, Petitioner submitted a request for reconsideration of his negative credible fear finding to USCIS. *Id*. USCIS accepted Petitioner's request for reconsideration

[2] Petitioner stated that his asylum application is currently pending, but the Government alleges it was denied. Dkt No. 1 at 1; Dkt. No. 18-1 at 3.

[3] Petitioner's credible fear interview occurred on February 6, 2025, the same day the negative credible fear determination was issued. Dkt. No. 18-1 at 2.

of fear decision on May 6, 2025. *Id*. at 3. On May 20, 2025, the Enforcement and Removal Operations (ERO) requested an update on Petitioner's reconsideration request to the USCIS Asylum office. *Id*. Then, on June 9, 2025, USCIS updated ERO that the request was denied. *Id.* At this point, the ERO concluded that the removal order was administratively final. *Id*. *See* 8 C.F.R. §§ 241.1, 1241.1(e). The 90-day removal period under 8 U.S.C. § 1231(a)(1)(A) ended on September 7, 2025. The 180-days of detention mark passed on December 6, 2025.

The Government represents that, from April 2025 to January 2026, it engaged in several efforts to effectuate Petitioner's removal. Beginning in early April 2025, a photo of the Petitioner was requested for a travel document. Dkt. No. 18-1 at 2. By late April 2025, an electronic travel document for Petitioner was completed. *Id*. at 3. In July 2025, a Detention and Deportation Officer (DDO) received a certificate of identity for Petitioner. *Id*. However, Petitioner did not provide the requested information to complete his travel document request process or his Afghanistan passport application on July 21, August 26, October 31, and November 5 of 2025. *Id*. at 3-4. Due to not having a travel document, Petitioner was denied a commercial removal in late July 2025. *Id*. at 3. In late October 2025, Petitioner applied to the Incentivized Voluntary Departure (IVD) program but was denied because he had a final order of removal. *Id*. A spreadsheet letter was sent to a DDO to obtain a letter of removal on November 5, 2025, and on November 7, 2025, the spreadsheet along with an I-269 was resent to Removal and International Operations (RIO) to obtain a travel document. *Id*. at 4. An Afghanistan Transportation Letter is required for Petitioner's removal, and requests were sent to the U.S. Embassy in Doha, Qatar for delivery to the Afghanistan Embassy on September 12, December 15, and December 24, 2025; and January 12 and January 22, 2026. *Id*. at 3-4.

## V. Procedural History

This case presents a unique procedural history due to the various habeas petitions filed by the Petitioner. Petitioner filed "Declarations" on August 11, 2025, in two separate civil actions initiated in different divisions within the Southern District of Texas. The first civil action began in the Corpus Christi Division, was transferred to the Brownsville Division, and then referred to U.S. Magistrate Judge Ignacio Torteya. *See* Dkt. Nos. 2, 7, 8. The second civil action began in the McAllen Division before being transferred to the Brownsville Division and ultimately referred to U.S. Magistrate Judge Ignacio Torteya. *See* Dkt. Nos. 1, 3, 4. On August 20, 2025, the Court ordered the consolidation of both civil actions into Civil Action No. 25-cv-179. Dkt. No. 15.

On November 12, 2025, Petitioner filed a third petition for writ of habeas corpus (originally, Civil Action No. 25-cv-265) in the Southern District of Texas Brownsville Division, which was subsequently referred to the undersigned. In this case, the Court ordered the Government to respond to the Petitioner's petition on February 3, 2026.

On January 7, 2026, in Civil Action No. 25-cv-179, Petitioner filed an amended petition for writ of habeas corpus ("Petition"). Dkt. No. 30. In this case, the Court ordered the Government to respond to the Petitioner's amended petition on January 13, 2026. Dkt. No. 33.

On July 29, 2026, the Court ordered for Civil Action No. 25-265 to be consolidated into Civil Action No. 25-cv-179. Dkt. No. 41. In both cases, Petitioner asserts identical claims and requests for relief. Accordingly, for ease of understanding, the Court will consider Petitioner's most recent petition (Dkt. No. 30) as the operative Petition.

In the Petition, Petitioner argues his detention violates the statutory limitations of 8 U.S.C. § 1231(a)(3) and his constitutional due process rights because there is no significant likelihood of removal in the reasonably foreseeable future. Dkt. No. 30 at 19. Petitioner requests his immediate release from Respondent's custody. *Id.* at 28.

In Civil Action No. 25-cv-265, the Court ordered the Government to Show Cause as to why the Writ should not be granted, Dkt. No. 12, and the Government responded with

a Response to the Petition and a Motion for Summary Judgment, Dkt. No. 18.[4] Regarding Petitioner's indefinite detention claims, the Government maintained ERO is "actively working to obtain a travel document for Petitioner and remove him from the United States as quickly as possible." *Id*. at 5. The Government also argues the Court should toll the removal period to "account for Petitioner's fraudulent conduct and unwillingness to assist ICE with his removal." *Id*.

## VI. Applicable Law

### a. 28 U.S.C. § 2241

The District Court may grant the writ of habeas corpus under 28 U.S.C. § 2241 when Petitioner's custody violates "the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner must show that his or her custody violates federal law. *See Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (stating that habeas relief cannot be issued unless Petitioner alleges "that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." (quoting *Hilliard v. Bd. of Pardons & Paroles*, 759 F.2d 1190, 1192 (5th Cir. 1985) (per curiam)).

### b. INA 8 U.S.C. § 1231 and *Zadvydas*

The Immigration and Nationality Act denotes a "removal period" in which the Attorney General "shall remove the alien from the United States within a period of 90 days" when an alien is ordered removed. 8 U.S.C. § 1231(a)(1)(A). During that 90-day-removal-period, an alien must be detained per the statute. 8 U.S.C. § 1231(a)(2)(A).

The statute is implicitly limited by the "Constitution's demands." *Zadvydas*, 533 U.S. at 689. The "Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person ... of ... liberty ... without due process of law.'" *Zadvydas*, 533 U.S. at 690. This constitutional concern becomes increasingly acute when detention lasts for

[4] The Court notes there was a "Response to Petition for Writ of Habeas Corpus" filed by the Government in the operative case, Civil Action No. 25-cv-179. Dkt. 34. However, the Court is considering the Government's most recent substantive filings (Civil Action No. 25-cv-265, Dkt. 19 and 25) as the operative responses for the remainder of this report.

more than six months. *Id.* at 701. For this reason, the United States Supreme Court created a framework in *Zadvydas v. Davis* for a Petitioner to challenge the constitutionality of his or his continued detention after a six-month period. *Id. See also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) ("Zadvydas thus created a '6–month presumption' of the validity of detention under § 1231, after which an alien could attack the reasonableness of his continued detention."). "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Id.* It is not the case that if an alien is not removed, then they must be released after six months. *Id.* at 701 ("[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future."). If the court determines "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700.

c. <u>8 C.F.R. § 241.13</u>

Federal regulations "establish special review procedures for those aliens who are subject to a final order of removal and are detained[.]" 8 C.F.R. § 241.13(a). Notably, "[a]n eligible alien *may* submit a written request for release to the [Headquarters Post-order Detention Unit] asserting the basis for the alien's belief that this is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1) (emphasis added). After receiving the initial written request, the Headquarters Post-order Detention Unit (HQPDU) conducts a review, which includes, among other procedures, permitting the alien an opportunity to respond and possibly granting an interview with the alien. 8 C.F.R. § 241.13(e)(1-6). HQPDU must issue a written decision regarding "whether there is a significant likelihood that the alien will be removed in the reasonably foreseeable future under the circumstances" and provide the decision to the alien. 8 C.F.R. § 241.13(g).

A determination that "there is no significant likelihood that the alien will be removed in the reasonably foreseeable future, despite the Service's and the alien's efforts to effect removal," absent special circumstances defined in the regulation, requires arrangements be made promptly to release the alien subject to "appropriate conditions." 8 C.F.R. § 241.13(g)(1). The regulations spell out the conditions of release. 8 C.F.R. §

241.13(h). A determination that there is a significant likelihood that the alien will be removed in the reasonably foreseeable future results in a denial of the alien's request. 8 C.F.R. § 241.13(g)(2). There is no avenue to pursue an administrative appeal of this denial. *Id.*

d. Standard of Review: Motion for Summary Judgment

Summary judgment is appropriate when the moving party (the Government) establishes there exists no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). The movant "can show there's no material dispute if he demonstrates that the [non-movant] could not prevail even if each factual question were resolved in their favor." *Freedom From Religion Found., Inc. v. Mack*, 49 F.4th 941, 950 (5th Cir. 2022). A "genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant." *Piazza's Seafood World, L.L.C. v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006).

If the non-movant (Petitioner) would bear the burden of proof at trial, the moving party may satisfy its summary judgment burden "by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Ortega Garcia v. U.S.*, 986 F.3d 513, 533 (5th Cir. 2021). The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Id.*

"All facts must be viewed in the light most favorable to the nonmovant and all justifiable inferences must be drawn in his favor." *Crane v. City of Arlington, Texas*, 50 F.4th 453, 461 (5th Cir. 2022). Thus, factual controversies are resolved in favor of the non-movant, "but only when the there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Lexon Ins. Co., Inc. v. Fed. Deposit Ins. Corp.*, 7 F.4th 315, 321 (5th Cir. 2021). In the "absence of any proof," the court cannot and will not assume that the non-moving party could or would prove the necessary facts. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 358 (5th Cir. 2017).

Finally, "a court should not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment." *Chacon v. Copeland*, 577 Fed. App'x. 355,

360 (5th Cir. 2014) (unpubl.) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (internal quotations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.*

**VII. Analysis**

The facts material to Petitioner's *Zadvydas* claim relate to the length of Petitioner's detention following the day his order of removal became administratively final and the Government's efforts to remove Petitioner to his home country of Afghanistan. The order of removal became administratively final on June 9, 2025. No. 18-1 at 3. Because the facts material to this case are undisputed, the issue in this case centers around whether there is a significant likelihood Petitioner will be removed in the reasonably foreseeable future.[5]

Petitioner's current detention has surpassed six months. While the presumptively reasonable period under *Zadvydas* is over, Petitioner "bears the initial burden of proof in showing that no such likelihood of removal exists" *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (citing *Zadvydas*, 533 U.S. at 701).

In the present case, Petitioner argues his prolonged detention indicates there is no significant likelihood of removal in the reasonably foreseeable future. Dkt. No. 30 at 19. The undisputed facts in the record show that Petitioner is a citizen of Afghanistan. Civil Action No. 25-cv-265, Dkt. No. 18-1 at 2. Even one year after Petitioner's order of removal became final, Respondents still have not received a travel letter for Petitioner from the U.S. Mission to Afghanistan in Doha, Qatar, which is required for his removal to Afghanistan. *Id*. at 4. For these reasons, the Court finds Petitioner carried his initial burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. As a result,

[5] The Court notes that whether Petitioner has exhausted his administrative remedies is not contested. Still, the Court highlights that Petitioner asserts he requested review of his negative credible fear finding by an Immigration Judge on February 6, 2025, and then by USCIS on March 5, 2025. Dkt. No. 18-1 at 2-3. At both times, the Petitioner was granted review and received a determination. *Id*.

the Government must now "respond with evidence sufficient to rebut" this showing. *Zadvydas*, 533 U.S. at 701.

The Government maintains that there is a significant likelihood Petitioner's removal will be effectuated in the near future. *See generally* Civil Action No. 25-cv-265, Dkt. No. 18. The Government points out that the ERO has submitted numerous requests to the US Mission to Afghanistan for a travel letter to effectuate Petitioner's removal. *Id.* at 5. The Government also argues that difficulties in obtaining a travel document is due to Petitioner's lack of cooperation in completing his Afghanistan passport application. *Id*. Further, the Government argues that this is cause for tolling the detention period. *Id.* To support the tolling argument, the Government cites the statutory provision which allows the removal period to extend beyond 90 days if the alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. §1231(a)(1)(C). However, even if the removal period is or was extended[6], the Court relies on Supreme Court jurisprudence, which allows Petitioner to attack the constitutionality of his mandatory detention under §1231 after a six-month period. *Zadvydas*, 533 U.S. at 701; *see also Andrade*, 459 F.3d at 543.

The Court turns to the Government's updates concerning its attempts to return Petitioner to Afghanistan. As of yet, the Government has not progressed beyond requesting a transportation letter from the US Mission to Afghanistan. The Government requested transportation letters five times with no timeline for receipt. Civil Action No. 25-cv-265, Dkt. No. 18-1 at 3-4. The Court considers these facts insufficient to demonstrate that there is a significant likelihood the Government will remove Petitioner in the reasonably foreseeable future. *See Mogos v. Thompson*, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026) (finding a Government declaration representing that ICE is actively working to

[6] The Court does not reach a conclusion on whether Petitioner's conduct can or does constitute failing or refusing to make timely application in good faith for travel or other documents necessary to his departure, or whether his conduct can or does constitute conspiring or acting to prevent his removal subject to an order of removal.

secure removal to a third country did not carry the Government's burden under the facts of the case). The Government's mere request for acceptance, even if made to numerous countries, does not show Petitioner will be removed in the reasonably foreseeable future. *See Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 705 (W.D. Tex. Oct. 24, 2025) (finding that "Respondents cannot carry their burden [under *Zadvydas*] with the outstanding requests, alone.").

Under these circumstances, the Court finds the Government did not carry its burden under *Zadvydas*. Moreover, the Court finds there is no significant likelihood of removal in the reasonably foreseeable future in Petitioner's case. Consequently, Petitioner's detention is unreasonable and no longer authorized by statute. *Zadvydas*, 533 U.S. at 699-700. This action is also a violation of the due process clause. *Villanova v. Tate*, 801 F. Supp.3d 694, 704 (S.D. Tex. Sept. 2025) (Hittner, J.). Because of this finding, the Court finds Respondents are not entitled to judgment as a matter of law.

The Court is mindful that the government has the right to enforce Petitioner's Order of Removal. *Id.* However, when there is no significant likelihood of removal in the reasonably foreseeable future, it is impermissible for the Government to continue to detain Petitioner indefinitely. *Id.* Furthermore, the Court notes that the choice at issue here "is between imprisonment and supervision under release conditions that may not be violated." *Zadvydas*, 533 U.S. at 698. Considering this, release from detention under the proper release conditions is recommended.[7]

Because the Court recommends granting habeas relief under Petitioner's challenge to his post-removal-period detention, the Court finds no need to address any claim or challenge not addressed in this report and recommendation. *Id.*

## VIII. Recommendation

It is RECOMMENDED that the Court:

(1) **GRANT** Petitioner's Writ of Habeas Corpus;

---

[7] *See Mogos v. Thompson*, 2026 WL 475079, at *6 ("*Zadvydas* requires Petitioner's release from [his] unlawful detention.").

(2) **RELEASE** Petitioner from detention subject to supervision in accordance with 8 U.S.C. § 1231(a)(3) and 8 C.F.R. § 241.5;

(3) **DENY** the Respondent's Motion for Summary Judgement (Dkt. No. 18 in 1:25-cv-265); and

(3) **DENY** as MOOT Petitioner's Motion to Consolidate (Dkt. No. 39).

## IX. Notice to the Parties

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge assigned to this case. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on July 30, 2026.

Karen Betancourt
Karen Betancourt
United States Magistrate Judge